DEAN D. NIRO (*pro hac vice application to be filed*)
dniro@vvnlaw.com
JOSEPH MCCOLLUM
jmccollum@vvnlaw.com (*pro hac vice application to be filed*)
**VITALE, VICKREY, NIRO, SOLON & GASEY LLP**
311 S. Wacker Drive, Suite 2200
Chicago, IL 60606
Tel: (312) 236-0733

SEAN M. KNEAFSEY (CA BAR# 180863)
skneafsey@kneafseyfirm.com
**THE KNEAFSEY FIRM, INC.**
707 Wilshire Blvd., Suite 3700
Los Angeles, California 90017
Tel: (213) 892-1200

*Attorneys for Plaintiff Conair LLC*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CONAIR LLC,<br>Plaintiff,<br>v.<br><br>TRE MILANO, LLC d/b/a Instyler,<br>Defendant. | Case No.:<br><br>**COMPLAINT FOR DAMAGES FOR PATENT INFRINGEMENT**<br><br>**[Demand for Jury Trial]** |

Plaintiff, Conair LLC ("Conair" or "Plaintiff"), for its Complaint for Patent Infringement against Tre Milano, LLC ("InStyler," "Tre Milano," or "Defendant") states as follows:

## SUMMARY OF THE PATENT INFRINGEMENT CLAIMS

1. This is a patent infringement lawsuit pertaining to a "Hair Styling Aid" disclosed in United States Patent Nos. 10,238,196 issued on March 26, 2019 ("the '196 Patent") and 11,350,719 issued on June 7, 2022 ("the '719 Patent") (collectively the "Hair Curling Patents") (attached as Exhibits A and B).

2. The technology involved in this case relates to "a hair styling aid and particularly, but not exclusively, to a home use device for imparting curls to a length of hair." (Ex. B, '719 Patent, col. 1: 24-26).

3. Before the inventions of the Hair Curling Patents, the clamping and twisting required during styling often caused damage to the hair, especially if heat was applied for extended periods. Curling irons also styled only small sections of hair at a time, requiring repeated use to curl an entire head of hair, which could be time-consuming.

4. The Hair Curling Patents provide a hair styling aid which simplifies the styling process for the user, while also being less damaging to the hair being styled.

5. This claim for patent infringement against InStyler involves the unauthorized infringement of the Hair Curling Patents. Tre Milano is manufacturing, importing, selling, and/or offering to sell Auto Curler products that infringe upon the Hair Curling Patents.

6. Tre Milano sells products under the name InStyler Tulip Auto Curler (the "InStyler Auto Curler products"). Discovery may reveal additional infringing products.







7. The InStyler Auto Curler products are covered by at least one claim of each of the Hair Curling Patents, as shown by the similarities between the products and the patent drawings:




Fig. 2



## THE PARTIES

8. Conair LLC is a limited liability company under Delaware law with its principal place of business at 1 Cummings Point Road, Stamford, CT 06902.

9. Conair is a leading international designer, manufacturer, and innovator of personal care and small kitchen appliances, cookware, hairbrushes and accessories, cosmetic bags, and travel accessories.

10. Conair sells various hair curling appliances under the names Curl Secret®, BaByLissPRO®, Miracurl®, and other names, covered at least by one or more of the claims of the Hair Curling Patents in the United States, including in this judicial district.

11. Conair is the exclusive licensee of the Hair Curling Patents with the right to bring suit in its own name under the Hair Curling Patents, and therefore Conair has standing to sue an infringer in its own name.

12. Conair entered a Patent License Agreement with TF3 Limited (Birmingham, England) on June 3, 2011, and entered subsequent amendments. The Patent License Agreement conveys to Conair all substantial rights to the patents at issue in this case.

13. Pursuant to the Patent License Agreement, Conair holds an exclusive license and is the exclusive licensee which owns all substantial rights in and has standing (without joining the nominal legal title owner) to sue for infringement of United States Patent No. 10,238,196, titled "Hair Styling Aid" and United States Patent No. 11,350,719 titled "Hair Styling Aid".

14. Pursuant to the Patent License Agreement, Conair holds the exclusive license, including the exclusive right to manufacture, market and sell products under the '196, and '719 Patents and enforce the '196, and '719 Patents.

15. The Patent License Agreement grants Conair an exclusive license to manufacture, or have manufactured, sell, or otherwise supply, and market products

under the ’196, and ’719 Patents.

16. The Patent License Agreement further provides Conair with absolute discretion and exclusive control over all claims and proceedings involving the ’196, and ’719 Patents and sue for past, present and future infringement in the United States.

17. Tre Milano has a principal place of business located at 29822 Avenida de las Banderas, Unit A, Rancho Santa Margarita, CA 92688. At all relevant times, Tre Milano conducted business within the United States and engaged in activities related to the distribution, offer for sale, and/or sale of professional beauty products and equipment.

18. Tre Milano has a website in the United States that promotes and advertises the InStyler Auto Curler products in this judicial district: https://www.instyler.com/. The link directs users to the InStyler Auto Curler products at issue in this Complaint offered for sale in the United States, including this judicial district.

**JURISDICTION AND VENUE**

19. Conair’s claims for patent infringement against Tre Milano arise under the patent laws of the United States, including 35 U.S.C. §§ 271 and 281. This Court has original subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338.

20. This Court has personal jurisdiction over Tre Milano because Tre Milano is a California limited liability company and has a principal place of business in Rancho Santa Margarita, CA.

21. Tre Milano imports, sells, and/or offers for sale a consumer series of automatic curling irons under the brand name “Tulip Auto Curler” in the United States. Tre Milano imports, sells, and/or offers for sale the InStyler Auto Curler products in this judicial district.

22. Additionally, this Court has personal jurisdiction over Tre Milano since Tre Milano has purposefully availed itself of the privilege of conducting activities within the State of California and has contacts with the State of California sufficient to give rise to, or relate to, the claim of infringement through the sale and advertisement of the InStyler Auto Curler products in this judicial district.

23. Tre Milano is subject to personal jurisdiction of this Court because, among other things, it has established sufficient contacts with California and within this judicial district.

24. Tre Milano has committed acts of patent infringement within California giving rise to this action. Tre Milano has sufficient contacts with this forum meeting or exceeding the minimum threshold such that the exercise of jurisdiction over it would not offend traditional notions of fair play and substantial justice.

25. Venue is proper in this judicial district under 28 U.S.C. §§ 1391(b) and 1400(b) because Tre Milano resides in this judicial district and has committed acts of infringement here.

## **THE CONAIR HAIR CURLING PATENTS**

26. United States Patent No. 10,238,196 titled "Hair Styling Aid" issued on March 26, 2019 ("the '196 Patent") and United States Patent No. 11,350,719 titled "Hair Styling Aid" issued on June 7, 2022 ("the '719 Patent") (collectively the "Hair Curling Patents").

27. The Hair Curling Patents describe a "hair styling aid which simplifies the styling process for the user, while also being less damaging to the hair being styled." (Ex. B, '719 Patent, col. 1:57-59).

28. The Hair Curling Patents provide that "[t]he static nature of the guide means relative to the rotatable element causes hair received by the device to be wrapped around the elongate member to create curls." (*Id.* col. 1:64-67).

29. The curling of the hair starts at or near the root and moves toward the

tip, in contrast to traditional methods. (*Id.* col. 2:1-2). The guide may comprise a slot or aperture in the wall:

> hair may, in use, enter the chamber through a simple slot or aperture, which may also form the static guide means. In this case it is preferable if guide means are provided, to help locate a length of hair in the slot.
>
> (*Id.* col. 2:30-34).

30. The Hair Curling Patents further provide a hair styling aid having a guide to receive a strand of hair, a rotatable element, and an elongate member. In use, the strand of hair is wound around the elongate member by the rotatable element: "The rotatable element may rotate in either direction and can take any suitable form, such as a simple radial protrusion extending out from the elongate member, or a helical member so as to assist in drawing hair into the device during use." (*Id.* col. 2:37-40).

31. Figure 1 of the Hair Curling Patents shows features of an embodiment of the disclosed invention:




32. As shown in Figure 1, one aspect of the disclosed embodiment includes a slot 16 through which hair is admitted into the chamber for curling. (*Id.* col. 4:56-59). The guide means 18 provides a mechanism "for hair being placed into the housing 6 through slot 16." (*Id.* col. 4:59-62). Figures 5A through 5C of the

disclosed embodiment (reproduced below) show slot 16 in which the length of hair is positioned and how the rotatable element 20 functions to wrap the hair around the elongate member 36. (*Id.* col. 5:40-6:9).

33. The internal working of this embodiment is shown in Figures 5A, 5B, and 5C, which demonstrates how the hair is placed in the housing through the guide and slot and the rotatable element rotates to wrap the hair around the elongate member:



Fig. 5A
Fig. 5C
Fig. 5B

34. As depicted in Figures 5A, 5B, and 5C, the elongate member 36 is shown in chamber 8. The rotatable element 20 operates to wrap the hair placed in

guide 18 around the elongate member 36. The elongate member 36 may be heated to generate a curl in the length of hair that had been placed in the guide 18. The hair curling process is described in the specification:

> The motor (not shown) causes the rotatable element **20** to rotate in the direction of arrow **46**. The part of the length of hair **42** which is passing through the cut-out section **21** of the disc **28** of the rotatable element **20** is pushed to one side by interaction with the walls of the cut-out section **21** of the disc **28** as it rotates, while a further part of the length of hair **42**, toward the root, is prevented from rotation by its location in one end of the groove **16**. This wraps the length of hair **42** around the elongate member **36** while simultaneously drawing the free end **44** of the hair into the housing **6** through the other end of the groove **16** as indicated by arrow **48**. Accordingly, curls are imparted at or near the root of a length of hair **42**, and subsequently to the remainder extending towards the free end **44**.

(*Id.* col. 5:56-6:4).

35. Claim 1 of the ’719 Patent is recited as follows:

> 1. A hair styling aid comprising:
>
> a housing;
>
> guide means comprising a slot in a wall of the housing for receiving a length of hair to be styled;

a rotatable element, rotatable relative to the housing and to the slot, the rotatable element being selectively rotatable in either direction to allow clockwise or anticlockwise curls to be formed;

an elongate member around which use, the length of hair is wound by the rotatable element, the elongate member being heated;

the housing surrounding a part of the elongate member such that a chamber is formed between the housing wall(s) and the elongate member;

the housing extending from a handle, the housing being integral with the handle;

the rotatable element being rotatable relative to the elongate member;

wherein the rotatable element has a predefined rotational starting position and is rotated automatically to return to the predefined rotational starting position after use;

the housing having a longitudinal axis and the slot being parallel with the longitudinal axis of the housing.

36. Claim 1 of the ’196 Patent is recited as follows:

1. A hair styling aid comprising:

a handle and a housing connected to the handle, the housing having:

a chamber in which a length of hair is received and retained for styling;

a guide for receiving the length of hair to be styled, the guide being provided by a slot in a wall of the housing through which the length of hair is admitted into the housing in use, the slot extending the full length of the chamber;

an elongate member, at least part of which is in the housing;

a rotatable element in the housing and adjacent to the elongate member, the rotatable element being rotatable in a clockwise direction and in an anticlockwise direction relative to the guide and, in use, winding the length of hair around the elongate member in the direction of rotation;

a motor for rotating the rotatable element in a clockwise direction and in an anticlockwise direction;

at least one heating element for heating the chamber;

wherein the rotatable element has:

two hair-pushing surfaces, one of the hair-pushing surfaces being oriented for pushing hair around the elongate member when the rotatable element is rotated clockwise and the other of the hair-pushing surfaces being oriented for pushing hair around the elongate

member when the rotatable element is rotated anticlockwise in use.

37. The InStyler Auto Curler products include the features of the claimed inventions.

**COUNT I**

**(Infringement of U.S. Patent No. 11,350,719)**

38. The InStyler Auto Curler products literally and directly infringe at least claims 1-3 and 7-10 of the ’719 Patent in violation of 35 U.S.C. § 271(a).

39. The InStyler Auto Curler products include “a housing” as recited in claim 1 of the ’719 Patent:




40. The InStyler Auto Curler products include a “guide means comprising a slot in a wall of the housing for receiving a length of hair to be styled” as recited in claim 1 of the ’719 Patent:



41. The InStyler Auto Curler products include a "rotatable element, rotatable relative to the housing and to the slot, the rotatable element being selectively rotatable in either direction to allow clockwise or anticlockwise curls to be formed" as recited in claim 1 of the '719 Patent:







As shown, the InStyler Auto Curler products include a rotatable element that rotates around the elongate member (appearing in gold above and below) and relative to the housing and slot. As also shown, the InStyler Auto Curler products include two independently selectable directional buttons, one of which (when selected) causes the rotatable element to rotate in a clockwise direction relative to the housing and the slot, and the other of which (when selected) causes the rotatable element to rotate in an anticlockwise direction relative to the housing and the slot.

42. The InStyler Auto Curler products include an "elongate member around which use, the length of hair is wound by the rotatable element, the elongate member being heated" as recited in claim 1 of the '719 Patent:










43. The InStyler Auto Curler products include a "housing surrounding a part of the elongate member such that a chamber is formed between the housing wall(s) and the elongate member" as recited in claim 1 of the '719 Patent:



44. The InStyler Auto Curler products include a "housing extending from a handle, the housing being integral with the handle" as recited in claim 1 of the '719 Patent:




45. The InStyler Auto Curler products include a "rotatable element being rotatable relative to the elongate member" as recited in claim 1 of the '719 Patent:




As shown, the InStyler Auto Curler products include a rotatable element being rotatable relative to the elongate member, whereby the rotatable element rotates

within the chamber and around the elongate member to wrap a length of hair around the elongate member.

46. The InStyler Auto Curler products include a "rotatable element [that] has a predefined rotational starting position and is rotated automatically to return to the predefined rotational starting position after use" as recited in claim 1 of the '719 Patent:




The predefined starting position for the rotatable element is a position in which the rotatable element is able to cause a length of hair to be wrapped around the elongate member. As shown, when a length of hair is inserted into the slot in the housing and one of the directional buttons is selected, the rotatable element will always be positioned such that it will wrap the length of hair around the elongate member.

47. The InStyler Auto Curler products include a "housing having a longitudinal axis and the slot being parallel with the longitudinal axis of the housing" as recited in claim 1 of the '719 Patent:




48. The InStyler Auto Curler products satisfy each and every element of claim 1 of the ’719 Patent and therefore directly and literally infringe claim 1 of the ’719 Patent.

49. The InStyler Auto Curler products further literally and directly infringe at least claims 2, 3, and 7-10 of the ’719 Patent in violation of 35 U.S.C. § 271(a).

50. The InStyler Auto Curler products satisfy each and every element of claims 1-3 and 7-10 of the ’719 Patent and therefore directly and literally infringe claims 1-3 and 7-10 of the ’719 Patent.

51. If any of the claim elements of the asserted claims of the ’719 Patent are not found in the InStyler Auto Curler products, there is infringement under the doctrine of equivalents.

52. The actions of infringement of the ’719 Patent by Tre Milano have injured Conair and Conair is entitled to recover damages to compensate it for such infringement, but in no event less than a reasonable royalty as established under 35 U.S.C. § 284.

53. The deliberate, intentional, and willful infringement by Tre Milano of one or more claims of the ’719 Patent after having knowledge of the ’719 Patent entitles Conair to enhanced damages under 35 U.S.C. § 284.

54. Plaintiff’s injury will continue unless or until this Court enters an injunction against further infringement by Tre Milano.

55. Plaintiff has complied with any applicable provisions of 35 U.S.C. § 287 by marking its products with the patent number and/or placing Tre Milano on actual notice of infringement of the ’719 Patent.

**COUNT II**

**(Infringement of U.S. Patent No. 10,238,196)**

56. The InStyler Auto Curler products literally and directly infringe at least claims 1-6, 9-11, 13-14, and 16-21 of U.S. Patent No. 10,238,196 in violation of 35 U.S.C. § 271(a).

57. The InStyler Auto Curler products include a handle and a “housing connected to the handle” as recited in claim 1 of the ’196 Patent:




58. The InStyler Auto Curler products include a “chamber in which a length of hair is received and retained for styling” as recited in claim 1 of the ’196

Patent:




59. The InStyler Auto Curler products include a “guide for receiving the length of hair to be styled, the guide being provided by a slot in a wall of the housing through which the length of hair is admitted into the housing in use, the slot extending the full length of the chamber” as recited in claim 1 of the ’196 Patent:



60. The InStyler Auto Curler products include an "elongate member, at least part of which is in the housing" as recited in claim 1 of the '196 Patent:




61. The InStyler Auto Curler products include a "rotatable element in the housing and adjacent to the elongate member, the rotatable element being rotatable in a clockwise direction and in an anticlockwise direction relative to the guide and, in use, winding the length of hair around the elongate member in the direction of rotation" as recited in claim 1 of the '196 Patent:






As shown, the InStyler Auto Curler products include a rotatable element in the housing and adjacent to the elongate member (appearing in gold above and below). As also shown, the InStyler Auto Curler products include two independently selectable directional buttons, one of which (when selected) causes the rotatable element to rotate in a clockwise direction relative to the guide, and the other of which (when selected) causes the rotatable element to rotate in an anticlockwise direction relative to the guide, such that a length of hair is wound around the elongate member in the direction of rotation.

62. The InStyler Auto Curler products include a "motor for rotating the rotatable element in a clockwise direction and in an anticlockwise direction" as recited in claim 1 of the '196 Patent:




As shown and as will be understood, the InStyler Auto Curler products include an electric motor powered via the attached electric cable at the bottom end of the products, where the electric motor causes the rotatable element to spin in a clockwise direction or in an anticlockwise direction depending on which directional button the user employs.

63. The InStyler Auto Curler products include "at least one heating element for heating the chamber" as recited in claim 1 of the '196 Patent:




64. The InStyler Auto Curler products include a "rotatable element that has two hair-pushing surfaces, one of the hair-pushing surfaces being oriented for pushing hair around the elongate member when the rotatable element is rotated clockwise and the other of the hair-pushing surfaces being oriented for pushing hair around the elongate member when the rotatable element is rotated anticlockwise in use" as recited in claim 1 of the '196 Patent:



65. The InStyler Auto Curler products satisfy each and every element of claim 1 of the ’196 Patent and therefore directly and literally infringe claim 1 of the ’196 Patent.

66. The InStyler Auto Curler products further literally and directly infringe at least claims 2-6, 9-11, 13-14, and 16-21 of the ’196 Patent in violation of 35 U.S.C. § 271(a).

67. The InStyler Auto Curler products satisfy each and every element of claims 1-6, 9-11, 13-14, and 16-21 of the ’196 Patent and therefore directly and literally infringe claims 1-6, 9-11, 13-14, and 16-21 of the ’196 Patent.

68. If any of the claim elements of the asserted claims of the ’196 Patent are not found in the InStyler Auto Curler products, there is infringement under the doctrine of equivalents.

69. The actions of infringement of the ’196 Patent by Tre Milano have injured Conair and Conair is entitled to recover damages to compensate it for such infringement, but in no event less than a reasonable royalty as established under 35 U.S.C. § 284.

70. The deliberate, intentional, and willful infringement by Tre Milano of one or more claims of the ’196 Patent after having knowledge of the ’196 Patent entitles Conair to enhanced damages under 35 U.S.C. § 284.

71. Plaintiff’s injury will continue unless or until this Court enters an injunction against further infringement by Tre Milano.

72. Plaintiff has complied with any applicable provisions of 35 U.S.C. § 287 by marking its products with the patent number and/or placing Tre Milano on actual notice of infringement of the ’196 Patent.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Conair, prays for the following relief:

a. A judgment finding that Tre Milano has infringed the ’719 Patent

and/or the ’196 Patent under 35 U.S.C. § 271(a);

b. A judgment that the ’719 Patent and/or the ’196 Patent are valid and enforceable;

c. A permanent injunction enjoining Tre Milano, its agents, officers, assigns, and others acting in concert with it, from infringing the ’719 Patent and/or the ’196 Patent;

d. An award of damages adequate to compensate Conair for the infringement of the ’719 Patent and/or the ’196 Patent that has occurred;

e. An award of pre-judgment interest and post-judgment interest on the damages awarded;

f. A judgment that Conair is entitled to an award of enhanced damages under 35 U.S.C. § 284 to be increased at the discretion of the Court up to three times the damages found;

g. A determination that this is an exceptional case and an award of Plaintiff’s attorneys’ fees pursuant to 35 U.S.C. § 285 and any other applicable statute or law, and an award to Conair of its fees and costs; and

h. Such other and further relief as the Court deems reasonable.

DATE: October 8, 2026

Respectfully submitted
Plaintiff, Conair LLC

By: *<u>/s/ Sean M. Kneafsey</u>*

SEAN M. KNEAFSEY (CA BAR# 180863)
skneafsey@kneafseyfirm.com
**THE KNEAFSEY FIRM, INC.**
707 Wilshire Blvd., Suite 3700
Los Angeles, California 90017
Telephone: (213) 892-1200
Fax: (213) 892-1208

DEAN D. NIRO
dniro@vvnlaw.com
JOSEPH MCCOLLUM
jmccollum@vvnlaw.com
**VITALE, VICKREY, NIRO, SOLON & GASEY LLP**
311 S. Wacker Drive, Suite 2200
Chicago, IL 60606
Telephone: (312) 236-0733
(*pro hac vice applications to be filed)*

***Attorneys for Plaintiff***

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury of any issue triable by right of a jury pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DATE: October 8, 2026

Respectfully submitted
Plaintiff, Conair LLC

By: *\/s/ Sean M. Kneafsey*

SEAN M. KNEAFSEY (CA BAR# 180863)
skneafsey@kneafseyfirm.com
**THE KNEAFSEY FIRM, INC.**
707 Wilshire Blvd., Suite 3700
Los Angeles, California 90017
Telephone: (213) 892-1200
Fax: (213) 892-1208

DEAN D. NIRO
dniro@vvnlaw.com
JOSEPH MCCOLLUM
jmccollum@vvnlaw.com
**VITALE, VICKREY, NIRO, SOLON & GASEY LLP**
311 S. Wacker Drive, Suite 2200
Chicago, IL 60606
Telephone: (312) 236-0733
(*pro hac vice applications to be filed)*

***Attorneys for Plaintiff***